IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jeffrey Glen Tucker, | Civil Action No. 2:10-1982-DCN-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | |
| Defendant. | |

    This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

    The Plaintiff, Jeffrey Glen Tucker, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

    The Plaintiff was born on June 1, 1969, and was 49 years old on the date the Administrative Law Judge (ALJ) issued his decision, July 23, 2009 (R. at 49). He has past relevant work as an automobile detailer and a Wal-Mart retail associate (R. at 98-108). The Plaintiff alleges that he became disabled on June 29, 2006, due to Tourette's syndrome, bipolar disorder, thyroid disease, and vision problems (R. at 60, 91).

    The Plaintiff protectively filed an application for DIB on December 27, 2006, alleging a disability onset date of July 29, 2006 (R. at 9, 79, 80, 87). His application was denied initially and on reconsideration (R. at 48-54, 58-60). Following a hearing on January 29, 2009, (R. at 19-47), the ALJ issued a unfavorable decision on July 23, 2009 (R. at 9-18).

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

As the Appeals Council denied the Plaintiff's request for review (R. at 1-5), the ALJ's decision became the Commissioner's final decision for purposes of judicial review. In making his determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.
>
> (2)    The claimant has not engaged in substantial gainful activity since July 29, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3)    The claimant has the following severe impairments: bipolar disorder, social anxiety, and a personality disorder (20 CFR 404.1520(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following restrictions: unskilled work with mental restrictions of carrying out simple tasks for 2 hours at a time without special supervision; relating appropriately with c-workers and supervisors without ongoing contact; adapting to workplace changes; recognizing and avoiding hazards; and no ongoing interaction with the general public.
>
> (6)    The claimant is capable of performing past relevant work as a automobile detailer [DOT# 915.687-034] requiring unskilled duties and medium exertional demands. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (7)    The claimant has not been under a disability, as defined in the Social Security Act, from July 29, 2006 through the date of this decision (20 CFR. 404.1520(g)).

(R. 11-18).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may

carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff contends that the ALJ erred in failing to find him disabled. In his brief, the Plaintiff raises the following issues: 1) Whether the ALJ applied an improper legal standard by failing to properly assess opinion evidence from examining psychologist Dr. Donald Salmon and 2) Whether the ALJ erred in assessing the Plaintiff's credibility by failing to comply with SSR 96-7p. (Pl.'s Br. at 1.)

**1) Dr. Salmon's Opinion**

The Plaintiff contends that the ALJ applied an improper legal standard in his assessment of the opinion of psychologist Dr. Donald Salmon, Ph.D. Specifically, the Plaintiff alleges the ALJ erred in giving more weight to the opinions of non-examining state agency medical consultants than to the opinion of Dr. Salmon. (Pl.'s Br. at 6-8.)

On October 25, 2008, the Plaintiff was sent to Dr. Salmon for a one-time psychological examination (R. 294 - 305). Dr. Salmon noted that the Plaintiff alternated, sometimes rather rapidly, between being overly animated and depressed and anxious (R. 294). He noted the Plaintiff's memory was quite varied with the Plaintiff recalling details quickly sometimes and other times pausing, stammering, and hardly being able to tell in what decade something happened. *Id.* He noted the Plaintiff's judgment and insight were equally varied. *Id.* He noted the Plaintiff acknowledged manic episodes and denied suicidal and homicidal thoughts, delusions, hallucinations, obsessions, phobias and substance abuse. *Id.*

Dr. Salmon attempted to administer the MMPI-2, but the Plaintiff was unable to complete the testing becoming agitated and giving up after completing 80 out of the 370 questions (R 298). Dr. Salmon diagnosed the Plaintiff with dementia due to head injury and bipolar disorder and he assigned the Plaintiff a GAF score of 40-50 (R. 299).[2] Dr. Salmon determined that the Plaintiff had marked to extreme limitations with regard to daily activities, social interactions, concentration, persistence, and pace. *Id.*

---

[2] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed.2000). A GAF score falls within a particular 10–point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. A GAF score of 41–50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* at 34. A GAF score of 31–40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." *Id.*

After summarizing Dr. Salmon's evaluation, the ALJ stated he did not afford Dr. Salmon's opinions great weight because they are not supported by the objective medical evidence (R. 17). The ALJ stated:

> Dr. Salmon's findings are based on the claimant's subjective report and reports from his wife on one occasion whereas Dr. Bishop's progress notes document visits with the claimant from 2006 through 2008 and reveal improvement with treatment. Dr. Salmon's opinions are not afforded great weight as they are unsupported by the objective medical evidence of record from the claimant's own treating source at WCPA whose longitudinal treatment relationship with the claimant spans a period of more than 3 years as documented in the record and summarized herein.

(R. 16-17).

The ALJ stated that he considered the opinions of state agency consultants, Drs. William Hopkins, M.D., and Frank Ferrell, M.D., that the Plaintiff's impairments are not severe and the opinions of Drs. Debra C. Price, Ph.D., and Robbie Ronin, Ph.D., that the Plaintiff's impairments are severe, but would not prevent the Plaintiff from working (R. 15). Dr. Price opined that the Plaintiff was capable of understanding and remembering simple instructions, able to carry out simple tasks for two hours at a time without special supervision, unlikely to have an unacceptable number of work absences due to psychiatric symptoms, able to relate appropriately to co-workers and supervisors but would be best suited to a work place with limited public contact (Tr. 235). Dr. Ronin concurred with Dr. Price's opinion (Tr. 280). Dr. Ronin opined that the Plaintiff had mild to moderate functional limitations, but the Plaintiff could perform simple, repetitive, routine tasks, and could interact appropriately with co-workers or supervisors but that the Plaintiff is not well-suited for working with the general public (Tr.274, 278-79, 280). The ALJ found these opinions consistent with the record as a whole. *Id.*

Initially, the undersigned notes that, as the ALJ found, Dr. Salmon saw the Plaintiff only once and thus Dr. Salmon was not one of the Plaintiff's treating physicians. Accordingly, Dr. Salmon is not due the deference afforded a treating physician. A treating

source is defined as a physician who provides a patient with medical treatment or evaluation and has an ongoing relationship with the patient. 20 C.F.R. § 404.1502. *See also Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir.1983) (holding "the opinion of a claimant's treating physician . . . is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.").

In determining what weight to give the opinion of non-treating physicians, the ALJ is to consider the examining relationship; the length, nature, and extent of treatment; the objective evidence supporting the opinion; and the opinion's consistency with the record as a whole. *See* 20 C.F.R. § 404.1527. An ALJ may properly give significant weight to an assessment from a non-treating physician. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). However, the fact that a physician has seen the claimant only one time is a factor to consider when determining the weight to give his opinion, especially if it is not generally supported by the record. *See, e.g., Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir. 2004); *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *Doyal v. Barnhart,* 331 F.3d 758, 763 (10th Cir. 2003); *Butera v. Apfel*, 173 F.3d 1049, 1056 (7th Cir. 1999); *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Generally, more weight will be given to the opinion of an examining source than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). "In appropriate circumstances, however, the opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may be entitled to more weight than the opinion of an examining source, or even the opinion of a treating source." *Mitchell v. Astrue*, 2009 WL 4823862, at *7 (E.D.Va. Dec. 11, 2009). Furthermore, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan,* 966 F.2d 1070, 1077 (7th Cir. 1992 ), or has not given good reason for the weight afforded a particular opinion.

The ALJ summarized Dr. Salmon's evaluation and then noted that Dr. Salmon's findings were based on the subjective reports from the Plaintiff and his wife (R. 16). The ALJ then noted that Dr. Bishop had treated the Plaintiff from 2006 through 2008 and showed that the Plaintiff had improved with treatment. *Id.* The ALJ found that Dr. Salmon's opinion was inconsistent with the Plaintiff's treatment records covering three years from the Western Carolina Psychiatric Associates ("WCPA") where Dr. Bishop practiced (R. 17). On October 27, 2006, Dr. Bishop wrote a letter stating that the Plaintiff would be unable to be the sole caregiver for his son for approximately three months while she determined the appropriate medication regime because the medication may cause temporary sedation (R. 201). On January 18, 2007, Dr. Bishop noted that the Plaintiff had improved and he believed his mood would be okay if his job situation were better and he felt his medication interfered with his ability to work 12 hour and swing shifts (R. 194). On September 3, 2008, a month before Dr. Salmon's evaluation, Dr. Bishop noted the Plaintiff was doing "pretty well" and getting along with his wife (R. 313). She noted he was getting projects done at home and doing maintenance work on the church bus. *Id.*

The undersigned is of the opinion that the ALJ set forth sufficient detail regarding the reasons he discounted Dr. Salmon's opinions. The ALJ discussed in detail the medical evidence and provided explicit reasons for not accepting Dr. Salmon's opinions, instead concurring with the opinions of the state agency physicians. The ALJ specifically discussed Dr. Salmon's opinion and discounted it because it appeared to be based largely on the Plaintiff's subjective complaints, was based on a one-time consultation with the Plaintiff, and was not consistent with Plaintiff's medical records. The ALJ weighed the evidence in a manner that complies with the regulations and his findings are entitled to deference. 20 C.F.R. §§ 404.1527(d)(1) & (3)-(5), 416.927(d)(1) & (3)-(5). Accordingly, the ALJ's decision should be affirmed.

**2) Plaintiff's Credibility**

The Plaintiff contends the ALJ erred in finding his testimony not credible. The Plaintiff argues that the ALJ did not give "an explicit reason for finding [the Plaintiff] not credible other than finding that the record as a whole does not support his allegations. No specific reasons are given. Nothing in the record is referred to explicitly." (Pl.'s Br. at 10.) The undersigned disagrees.

When an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir.1985).

> It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96–7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir.1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. *See also* 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human*

*Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (*quoting Smith v. Schweiker*, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed.Reg. at 34486. In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

> (1) the individual's daily activities;
>
> (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3) factors that precipitate and aggravate the symptoms;
>
> (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*

The ALJ found at *Craig's* step one that the Plaintiff had impairments capable of producing the symptoms that he alleged and, accordingly, proceeded to step two (R. 14). It is here that the Plaintiff has an issue, as a claimant's allegations about his pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. After considering the medical evidence in the record, the ALJ determined that the Plaintiff was not credible (R. 14). Then, contrary to the Plaintiff's argument, the ALJ

refers to various medical records where it is noted that the Plaintiff was improving and doing better (R. 14-15).

The evidence cited in the ALJ's decision contained specific findings, sufficiently detailed, and supported by substantial evidence. The ALJ considered the Plaintiff's subjective complaints in conjunction with his abilities to perform daily activities, the medical evidence, and the other evidence of record. Accordingly, the Plaintiff has failed to demonstrate that the ALJ erred in finding that the Plaintiff's subjective complaints are inconsistent with the record. *Hines v. Barnhart*, 453 F.3d 559, 565 n. 3 (4th Cir.2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints); *see also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"). Moreover, the court may not substitute its judgment for the ALJ's. *See Craig*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

After reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. *Shively v. Heckler,* 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)  As noted above, substantial evidence supports the ALJ's conclusion that the functional limitations the Plaintiff's claims are not supported by the record.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

                                              s/Bruce Howe Hendricks
                                              United States Magistrate Judge

July 21, 2011
Charleston, South Carolina